UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Case No. 08-cv-420 |
| v. ) | |
| ) | Judge Sharon Johnson Coleman |
| RONALD J. RICHARDSON, ) | |
| ) | |
| Movant/Petitioner. ) | |
| ) | |
| ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

This case comes before the Court on movant Richardson's motion to correct or vacate his sentence pursuant to 28 U.S.C. §2255. Based on his trial counsel's performance, Richardson raises several claims of ineffective assistance of counsel. Richardson retained Phillip Turner two years prior to his conviction. Richardson's ineffective assistance of counsel claims are encompassed in three basic claims: (1) that Turner failed to adequately counsel him on whether to plead guilty or go to trial; (2) that Turner failed to file a motion for serverance/misjoinder; and (3) that Turner moved to withdraw as counsel three days before deadline for filing post-trial motions. In his supplemental brief, counsel appointed for Richardson focused on the first and third claims. For the reasons that follow, Richardson's motion is denied.

**Background**

The factual background has been taken from the Seventh Circuit's opinion in the direct appeal of this matter. *U.S. v. Ghilarducci*, 480 F.3d 542 (7th Cir. 2007)(J. Williams). Richardson and his codefendant, August C. Ghilarducci, were convicted for *inter alia* engaging in a confirmation of funds scheme. Ghilarducci was president and owner of Westchester Financial

Associates, Inc. ("WFA") and executed a series of deals, sometimes with Richardson's assistance, in which they charged WFA clients fees for procuring Confirmation of Funds ("COF") letters from financial institutions. The letters purported to show that financial institutions could lease large sums of money to WFA clients for a short period of time. The leased funds would then be used in trading programs to generate profits. Richardson marketed the letters and Ghilarducci executed the documents with WFA clients. Over $22 million in fees was paid by several dozen clients. WFA clients testified at trial that they relied on the oral representations of both Richardson and Ghilarducci that COF deals had been successful in the past and future deals would also yield high returns. Richardson promised to introduce WFA clients to trading programs that he had found reliable. WFA clients were also reassured by representations that fees would be deposited in an attorney's escrow account until the COF letter issued. A WFA attorney testified that he wired money out of the escrow account at Ghilarducci's request on multiple occasions. The COF letters were issued from foreign banks with questionable status. The COF letters proved to be worthless. In 1997, the Illinois Attorney General began an investigation. There was a second scheme tried simultaneously involving railroad bonds, in which Richardson's codefendant, Ghilarducci, was also charged. Richardson was not involved in and not charged with the railroad bond scheme. Richardson was found guilty of racketeering, wire fraud, money laundering, and tax evasion and sentenced to 140 months in prison. On direct appeal, Richardson challenged the sufficiency of the evidence and the appellate court affirmed the conviction and sentence. *U.S. v. Ghilarducci*, 480 F.3d 542 (7th Cir. 2007), *cert. denied*, 552 U.S. 886 (2007).

Following his conviction, Richardson assisted the government in an unrelated prosecution. The government offered to submit a motion to the sentencing judge pursuant to

*Federal Rule of Criminal Procedure* 35(b), asking the judge to reduce the length of Richardson's sentence by 15 percent. The government's offer was contingent on Richardson withdrawing his direct appeal. Richardson refused to withdraw the appeal of his conviction and thereafter filed his own Rule 35(b) asserting that the government's refusal to file such a motion on his behalf had been unreasonable. After the Seventh Circuit affirmed Richardson's conviction, the district court dismissed Richardson's Rule 35(b) motion for lack of jurisdiction. Richardson appealed the dismissal of his Rule 35(b) motion and the Seventh Circuit affirmed. *U.S. v. Richardson*, 558 F.3d 680 (7th Cir. 2009).

Shortly before Richardson filed his appeal of Judge Coar's denial of his Rule 35(b) motion, Richardson filed the section 2255 motion now pending before the court. Judge Coar stayed the section 2255 motion pending resolution of Richardson's appeal on the Rule 35(b) issue. After the Seventh Circuit affirmed the denial of his Rule 35(b) motion, Judge Coar dismissed the section 2255 motion for lack of jurisdiction, interpreting the motion as a second collateral attack. The Seventh Circuit reversed, *U.S. v. Richardson*, No. 10-2391 (7th Cir. March 11, 2011), and remanded to the district court to consider the merits of Richardson's section 2255 motion. It was assigned to this Court's calendar upon Judge Coar's retirement. This Court appointed counsel to assist Richardson and allowed a supplemental filing by counsel. Currently before the Court is Richardson's original section 2255 motion as supplemented by his court appointed attorney.

   1. *Failure to Adequately Counsel on Decision to Accept or Reject a Plea*

Richardson argues that several aspects of Turner's representation at trial were deficient. He first argues that Turner said repeatedly that he could defeat the government at trial and that this statement was based on a failure to adequately prepare for trial and a lack of recognition of

the strength of the government's case. Richardson also argues that the government stated they would add RICO charges if he did not agree to plead guilty and that Turner did not adequately advise him of the consequences of rejecting the government's offer. Additionally, Richardson asserts that Turner should have known the government's evidence was "overwhelming" as the government now contends and that Turner should have convinced him to plead guilty. Richardson further argues that he wanted to testify on his own behalf, but that Turner advised against it because "he had won the case."

The government presents Turner's affidavit in which he states that he was acting on his client's wishes by rejecting the government's offer of a plea agreement. Turner avers that Richardson proclaimed his innocence throughout the trial and thus Turner believed Richardson would not have accepted pleading guilty. Turner further states that he tried to interview several people with information connected with the case, but many were represented by counsel and refused to talk to him. Judge Coar also denied several of Turner's requests to subpoena documents from third-parties.

*2. Failure to File a Motion for an Evidentiary Hearing on Joinder/Severance*

Richardson essentially argues that severance "should have been granted". Richardson argues that he was prejudiced by being tried as a co-defendant with Ghilarducci because the government presented twenty-seven witnesses solely against Ghilarducci and Richardson was not involved at all with the railroad bonds. Richardson also argues that Turner failed to investigate witnesses and failed to discover that Ghilarducci would confess to withdrawing money from the escrow accounts. Turner attests that he filed two motions to sever that were denied by the Court. Turner also asserts that he moved for a limiting instruction, which the Court

gave, informing the jury that certain witness provided testimony unrelated to the charges against Richardson.

Richardson further claims that Turner failed to effectively cross-examine witnesses including attorney for WFA, Grippo, who is also the basis for Richardson' *Brady* violation claim. Richardson contends that Grippo represented the government in a case and that it did not disclose that information even though Grippo was a key witness in the Richardson/Ghilarducci trial. The government responds that the case which Richardson cites post-dates Richardson's trial and the firm of Grippo & Elden acted as private retained counsel for one Assistant U.S. Attorney and did not represent the "government". *See In re United States*, 398 F.3d 615 (7th Cir. 2005).

*3. Counsel Withdrew his Representation Three Days before Post-Trial Motion Deadline*

Richardson argues that Turner abandoned him at a critical stage of the case when he filed a motion to withdraw as counsel and moved for an extension of time to file post-trial motions, when he should have known that Judge Coar did not have the authority to grant an extension beyond seven days after the conviction. Turner responds that he filed the motion to withdraw because Richardson threatened to file a complaint with the disciplinary board. Richardson admits that he told Turner that he would lodge a complaint against him, but contends it was not a threat and thus should not have been a basis for withdrawal. Turner also states that he had preserved through objections in the trial record, any potential issues for review.

**Analysis**

Section 2255 states that: "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. §2255.

The standard for evaluating an ineffective assistance of counsel claim is well established. In order to prevail, the petitioner must show: (1) that his attorney's performance fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for his counsel's errors, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). "There is a strong presumption that any decisions by counsel fall within a wide range of reasonable trial strategies." *Valenzuela v. United States*, 261 F.3d 694, 698-99 (7th Cir. 2001). Under the second prong of *Strickland* the petitioner must show that he was prejudiced by his counsel's deficient performance. *Strickland*, 466 U.S. at 689.

The presumption that counsel has acted reasonably is a strong one. Much of Richardson's argument appears to stem from the fact that he was convicted (and sentenced to 140 months) and thus was unhappy with Turner's performance because he did not prevail. In fact, at several points in his brief (not the supplemental filed by counsel) Richardson seems to argue that Judge Coar should have granted severance and that Turner should not have been allowed to withdraw when he did. Although perhaps Judge Coar could have severed the cases or claims, it does not appear that Richardson ever appealed the issue of severance and the record shows that Turner twice moved for severance.

Although Richardson cites numerous cases, many are not binding on this Court and he appears to be tailoring his arguments to what he found in the cases. His attorney does not cite much in the way of authority, but neither does the government. For the most part, defendant's

counsel relies on two cases, aside from *Strickland, United States v. Cronic,* 466 U.S. 648 (1984), and *United States v. Kitchen,* 227 F.3d 1014 (7th Cir. 2000), though neither case is analogous to the case at bar. *Cronic* is cited for the proposition that a defendant who is denied counsel at a critical stage of the judicial process need not show prejudice. The court in *Cronic* held that if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of *Sixth Amendment* rights that makes the adversary process itself presumptively invalid. *Cronic,* 466 U.S. at 659. For example, in *Davis v. Alaska*, 415 U.S. 308 (1974), prejudice was presumed because the petitioner had been denied by the trial court the right of cross-examining certain witnesses. The Supreme Court has "uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding. *Cronic,* 466 U.S. at 659 n.25.

 Here, Richardson argues that Turner did not adequately prepare and did not effectively cross-examine witnesses. Yet, there is no evidence that Richardson was prevented from cross-examining witnesses, though it may not have achieved the desired results. Turner states in his affidavit that he sought to interview certain of the government's witnesses, but buy many were represented by counsel and refused to talk to him and his requests to subpoena documents were denied by the Court.

 Interestingly in *Cronic,* the Supreme Court reversed the appellate court's ruling that the defendant's trial counsel was ineffective because he had never tried a criminal case before and had only 25 days to prepare for trial when the government had four and half years of preparation. The Supreme Court held that every criminal lawyer must try their first case at some point and preparing a defense does not take as long as preparing to prosecute a case because the defense

has no burden. Here, Turner had tried numerous cases, including criminal trials both on behalf of defendants and as an Assistant U.S. Attorney. Moreover, after Turner withdrew any new counsel would have three days to prepare post-trial motions and, if 25 days is sufficient to prepare for trial, several days, where objections have been preserved in the trial record could be sufficient to prepare post-trial motions. Unfortunately, Richardson relied on Judge Coar having granted the extension to file post-trial motions that he later found to have allowed without authority to do so. Notably, the government did not object to Turner's motion when it was heard and Judge Coar granted it. Nevertheless, Richardson's appeal was heard by the Seventh Circuit and therefore even if he did not have counsel for the filing of post-trial motions, the Seventh Circuit considered his appeal on the sufficiency of the evidence and propriety of his sentence.

*Kitchen* is cited for the proposition that post-trial motions are a critical stage of the judicial process. In *Kitchen*, the court held that although the petitioner had a right to counsel for his post-trial but pre-appeal motion for a new trial and that counsel's failure to appeal the denial of petitioner's Rule 33 motion for a new trial was deficient performance, there was no prejudice. Here, there is no indication in the record that if counsel had not withdrawn the outcome would have been different. Richardson was able to appeal and there is also no indication of any basis for appeal that Richardson was unable to pursue due to Turner's withdrawal.

**Conclusion**

There is nothing in the record for this Court to find Turner's performance deficient. Instead, the record shows that Richardson resoundingly professed his innocence and the lawyer he retained to represent him tried to mount a reasonable defense. Many of Richardson's complaints directed at Turner actually appear to be the result of the Court's rulings, rather than any failure on the part of counsel. Therefore, Richardson has not shown that Turner's

performance fell below an objective standard of reasonableness or that the result of the proceedings would have been different. Accordingly, this Court finds that Richardson has not met his burden under *Strickland* and there is no basis to vacate his sentence.

IT IS SO ORDERED.

Date: April 16, 2012

Entered: _____

Sharon Johnson Coleman